FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTHONY THOMPSON,<br><br>          Plaintiff,<br><br>   v.<br><br>SMART CAR LEASING & SALES, LLC, a Washington State limited liability company; JAY JIMMY JOHN, an individual; and DAVID JOHN, an individual,<br><br>          Defendants. | NO: 4:17-CV-5102-RMP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT |

BEFORE THE COURT is Plaintiff Anthony Thompson's motion for summary judgment against Defendants Jay "Jimmy" John and Smart Car Leasing & Sales, LLC ("Smart Car").[1][2] Although Plaintiff delivered the motion and

---

[1] After filing the motion for summary judgment, Plaintiff clarified in a praecipe that he no longer seeks summary judgment against Defendant David John, who has declared bankruptcy, but continues to seek summary judgment against Defendants Jimmy John and Smart Car because those Defendants have not declared bankruptcy, to the best of Plaintiff's knowledge. *See* ECF No. 47.

[2] For the sake of clarity, the Court refers to the individual Defendants by their full names throughout this Order.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 1

accompanying statement of facts and declarations to Defendants at their last known addresses by certified mail, ECF No. 39 at 18, Defendants did not respond to the motion. In addition, the Court repeatedly has alerted Defendants in writing that "continued failure to participate in court proceedings in this matter or non-compliance with court orders may result in further financial or other sanctions against Defendants individually and/or against their company." ECF No. 31 at 3; *see also* ECF Nos. 33 and 38.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the party opposing summary judgment must specify facts that establish a material dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* Local Rule 56.1(b).

Even when a summary judgment motion is unopposed, a district court must review the motion and the evidentiary materials submitted in support of it to determine whether the moving party has shown himself to be entitled to judgment as a matter of law. *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993), *rev'd on other grounds*, 517 U.S. 820 (1996).

With respect to the requests for admission that Plaintiff served on Defendants, "[a] matter is admitted unless, within 30 days after being served, the party to whom

the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Once admitted, the matter "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Those admissions may be used to support a summary judgment motion. *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) ("Unanswered requests for admissions may be relied on as the basis for granting summary judgment.") Similarly, Local Rule 56.1(d) permits the Court to "assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [by the party opposing summary judgment in its statement setting froth specific facts in establishing a genuine issue of material fact]." Further, Fed. R. Civ. P. Rule 56(e) provides that "[i]f the opposing party does not respond [to a motion for summary judgment], summary judgment should, if appropriate, be entered against that party."

## FACTUAL STATEMENT

Defendants Jimmy John and David John hired Plaintiff Anthony Thompson to work as a car salesman at Defendant Smart Car in September 2015. ECF No. 42 at 1.[3] When Mr. Thompson, who is African-American, was introduced to his

---

[3] By failing to answer Plaintiff's requests for admission, Defendants Jimmy John and Smart Car admitted that they had a contractual relationship with Mr. Thompson. *See* ECF No. 41-1 at 3.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 3

supervisor, Justin Gauge, who is Caucasian and did not participate in Mr. Thompson's interview, Mr. Gauge questioned the need for a new employee and commented, "Oh boy, we got a brother." *Id.* at 2. Mr. Thompson asserts that Jimmy John heard the statement. *Id.* Mr. Gauge acted as a manager at Smart Car throughout Mr. Thompson's employment there.

During Mr. Thompson's first several days of employment, he heard Mr. Gauge tell "several inappropriate racial jokes" and use the word "nigger" on multiple occasions. ECF No. 42 at 2. Mr. Thompson reported the incidents, which he experienced as "racial harassment," to Jimmy John approximately four or five times. *Id.* However, Mr. Gauge's behavior further deteriorated after those reports. *Id.*

Mr. Gauge began to threaten Mr. Thompson physically, telling Mr. Thompson "on at least one occasion that he would 'beat [his] skinny ass.'" ECF No. 42 at 2. On September 12, 2015, while Mr. Thompson was interacting with a customer, Mr. Gauge interrupted the conversation to "scream[] profane insults" at Mr. Thompson. ECF No. 42 at 2. Mr. Thompson recalled, "The customer left and I felt humiliated." *Id.* Mr. Thompson asked Mr. Gauge why he was treating Mr. Thompson in such a manner, and he responded, "I'm allergic to monkeys." *Id.* Mr. Thompson told Mr. Gauge that he would no longer tolerate such offensive behavior, and it needed to stop immediately. *Id.* Mr. Gauge became "enraged," called him a "fucking nigger," and told Mr. Thompson that he was fired. *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 4

Mr. Thompson responded to Mr. Gauge that he had not hired Mr. Thompson, so he lacked the authority to fire Mr. Thompson. ECF No. 42 at 3. Mr. Thompson recalled that Mr. Gauge threatened to beat up Mr. Thompson or call the police. *Id.* Mr. Thompson then exchanged the following text messages with David John:

> Mr. Thompson: This is Anthony, call me.
> David John: I'll call you here in 20 min
> Mr. Thompson: Justin called me a fucking nigger this morning. Talk to him about that.
> David John: I just heard I'll talk to him now about that I'm sorry

ECF Nos. 42 at 3; 42-1 at 2 (punctuation as in original).

Mr. Gauge called Jimmy John, who joined Mr. Gauge and Mr. Thompson at the car lot and asked Mr. Thompson to go to another work site to allow Jimmy John to speak with Mr. Gauge. ECF No. 42 at 3. After a few hours, Jimmy John called Mr. Thompson and informed him that his employment was terminated because Mr. Gauge would not work with Mr. Thompson. As recalled by Mr. Thompson, Jimmy John informed him that "they had to choose between Mr. Gauge and me, and they chose Mr. Gauge." *Id.* A short time later that day Mr. Thompson exchanged the following text messages with Jimmy John:

> Mr. Thompson: I understand the business aspect of your decision Boss, but I get called a fucking nigger and I get let go. That's not fair and that's not right.
> I can't tell you how to run your business and I do appreciate the opportunity you gave me to work for you.

Jimmy John: Sorry things worked out that way guys a jackass but ..

ECF Nos. 42 at 3; 42-2 (punctuation as in original).

Mr. Thompson has struggled to "get [his] professional career back on track" after his employment at Smart Car was terminated. ECF No. 42 at 3. He has moved out of state, and has experienced "prolonged periods of unemployment and even homelessness." *Id.*

## LITIGATION HISTORY

Plaintiff filed his complaint on July 20, 2017, and served Defendants David John and Smart Car on July 27, 2017. ECF Nos. 1 and 3. Plaintiff encountered difficulty accomplishing service on Defendant Jimmy John, and Defendants' counsel at the time informed Plaintiff that he could not accept service on behalf of Jimmy John. ECF No. 19 at 2. Plaintiff sent Jimmy John a letter by certified mail on September 5, 2017, requesting that he waive personal service. *Id*. at 21; *see* Fed. R. Civ. P. 4(d). Jimmy John never responded. ECF No. 19 at 2.

Defendants, through counsel, filed an answer on September 11, 2017. ECF No. 6. On September 29, 2017, Defendants' counsel moved to withdraw as attorney of record for all three Defendants. ECF No. 8. Plaintiff opposed the motion to the extent that defense counsel's withdrawal would leave a business entity unrepresented in violation of Local Rule 83.6. ECF No. 11 (filed Oct. 23, 2017). On October 23, 2017, an individual who identified himself as Jimmy John called

Plaintiff's counsel Sam Kramer and informed Mr. Kramer that he, Jimmy John, would not hire a new attorney because he did not want to pay any further attorney's fees, and that Plaintiff should "bring it on." ECF No. 19 at 9.

On October 25, 2017, a process server hired by Plaintiff successfully served Jimmy John. On November 29, 2017, the Court held a telephonic hearing on defense counsel's motion to withdraw and on motions by Plaintiff related to service of the complaint and summons on Defendant Jimmy John. The Court granted defense counsel's motion to withdraw from representation of the individual Defendants but denied the motion with respect to Smart Car. ECF No. 22. The Court also reserved the issue of whether to award Plaintiff the fees and costs associated with service of Jimmy John, to allow Defendants an opportunity to retain replacement counsel, or participate *pro se* in the case of the individual Defendants, and either respond to the motion or participate in the hearing, or both. *Id.*

On December 12, 2017, defense counsel filed a second motion to withdraw from representation of Smart Car. ECF No. 24. He attached a declaration demonstrating that he had notified Smart Car, care of Jimmy John and David John at Smart Car's last known address, of the potential consequences of proceeding without counsel. ECF No. 24-1. Mr. Davis also represented that he attempted to meet with all Defendants on December 1, 2017, but Defendants did not attend. *Id.*

Since withdrawal of counsel, Defendants have failed, unambiguously and entirely, to participate in this case. None of the Defendants attended the January 8,

2018, hearing at which the Court heard, and then granted, Plaintiff's motions for attorneys' fees and costs incurred in serving Defendant Jimmy John. ECF No. 31. Defendants also disregarded the Court's order for Plaintiff and Defendants to meet and confer regarding discovery within fourteen days. Both the Court and Plaintiff had mailed the order to Defendants via U.S. Postal Service. *Id.* Consequently, the Court granted Plaintiff leave to proceed with written discovery on February 1, 2018. ECF No. 33. Plaintiff's counsel served requests for admission by mail to Defendant Jimmy John on February 5, 2018; to Defendant David John on February 6, 2018; and to Defendant Smart Car on February 12, 2018. ECF No. 41. Defendants did not respond to any of Plaintiff's discovery requests. *Id.*

## DISCUSSION

**Federal Claims**

In Plaintiff's complaint, he claimed that Defendants violated the federal civil rights statute 42 U.S.C. § 1981 by subjecting Plaintiff to a hostile work environment, unlawfully discriminating against him on the basis of race, and subsequently retaliating against him for raising the issue of his mistreatment. Section 1981 applies to both private and state actors and prohibits racial discrimination that interferes with making or enforcing contracts as well as the exercise of other rights listed in the statute. *See* 42 U.S.C. § 1981; *St. Francis Coll. V. Al-Khazraji*, 481 U.S. 604, 609 (1987). Defendants admit to having had a contractual employment relationship with Plaintiff. *See* ECF No. 41-1 at 3.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 8

To state a section 1981 discrimination claim, Plaintiff must establish the following elements: (1) he is a member of a racial minority; (2) Defendants acted with an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated under section 1981, including making and enforcing contracts. *See Jefferson v. City of Fremont*, 2012 U.S. Dist. LEXIS 60141, at *5–6 (N.D. Cal. Apr. 30, 2012). An intent to discriminate may be shown through "overt acts coupled with racial remarks." *Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1988).

For a hostile work environment claim, Plaintiff must show that (1) he was "subjected to verbal or physical conduct" because of his race; (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Manatt v. Bank of Am.*, 339 F.3d 792 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (internal quotation marks omitted)); *see also Johnson v. Riverside Healthcare Sys. LP*, 534 F.3d 1116, 1122 & note 3 (9th Cir. 2008) (hostile work environment claims under section 1981 contain the same elements a Title VII claim).

For a retaliation claim, Plaintiff must prove that (1) he engaged in a protected activity, such as complaining of racial discrimination; (2) Defendants subjected him to an adverse employment action; and (3) there is a casual link between the protected activity and the adverse action. *Manatt*, 339 F.3d at 800.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 9

Defendants' admitted facts, combined with Plaintiff's own declaration, satisfy the elements of all three bases for section 1981 liability. There is no dispute in the record that race was a motivating factor in Defendants' decision to terminate Plaintiff's employment. *See* ECF No. 41-1 (request for admission that Plaintiff's race was a substantial factor in Defendants' decision to terminate Plaintiff's employment). Therefore, disparate treatment is established.

Likewise, there is no dispute that the harassment that Mr. Thompson experienced from his manager, and reported to Defendants, was based on Mr. Thompson's race. Mr. Thompson's recitation of the way that Mr. Gauge's outburst on September 12, 2015, humiliated him in front of a customer, and resulted in the customer leaving, establish that the harassment inhibited Mr. Thompson from performing his work, and, thus, altered the conditions of his employment. Therefore, a hostile work environment claim is established.

Finally, there is no dispute that Plaintiff engaged in protected activity by reporting that Defendants' agent, Mr. Gauge, harassed him on the basis of race. Defendants also admitted that there was "a causal connection" between Plaintiff reporting his concerns about racial harassment and their decision to terminate Plaintiff's employment. ECF No. 41-1 at 6. Therefore, Plaintiff established a section 1981 retaliation claim.

/ / /

/ / /

**State Law Claims**

Plaintiff also raised claims for racial harassment and a racially hostile work environment under the Washington Law Against Discrimination ("WLAD"), Washington Revised Code ("RCW") chapter 49.60, and a state law claim of wrongful termination in violation of public policy.

A plaintiff pursuing a hostile work environment claim under WLAD must show that the harassment "(1) was unwelcome, (2) was because of a protected characteristic, (3) affected the terms or conditions of employment, and (4) is imputable to the employer." *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 260 (Wash. 2016) (citing *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406–07 (1985)); *see also Fisher v. Tacoma Sch. Dist. No. 10*, 53 Wn. App. 591, 595–96 (Wash. App. Div. 2 1989) (applying *Glasgow*'s hostile work environment elements to a race-based hostile work environment claim). "To hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action." *Glasgow*, 103 Wn.2d at 407.

As determined above, Defendants admitted to the first three elements of a WLAD hostile work environment claim. Further, as a matter of law, the harassment by Plaintiff's manager at Smart Car is imputed to Defendants, as the employer, because Defendants knew of the conduct due to Plaintiff's reports before and on the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 11

day of his termination and took no corrective action. *See Glasgow*, 103 Wn.2d at 407.

A Washington public policy wrongful discharge claim may arise out of an employee's termination for reporting employer misconduct. *Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC*, 171 Wn.2d 736 (Wash. 2011). The plaintiff must "prove that the policy-linked conduct caused the dismissal." *Id.* at 756. However, as a matter of law, the public policy tort is precluded if there are "adequate alternative means of promoting the public policy" at issue. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 182 (2005). In this case, the other claims raised by Plaintiff, all of which the Court has found to be established as a matter of law, demonstrate that other relief is available to Plaintiff to protect against the discrimination and retaliation that he experienced. Therefore, the public policy wrongful termination claim is not available to Plaintiff.

**<u>Sanction of Default Judgment</u>**

Plaintiff asks in the alternative that the Court enter default against Defendants Jimmy John and Smart Car for consistently failing to participate in this litigation. The Court finds that such a sanction, although severe, is appropriate here as well.

Although the Court already determined liability for Defendants Jimmy John and Smart Car on the basis of 42 U.S.C. § 1981 and WLAD, the Court examines Plaintiff's argument for the sanction of default judgment as an alternate ground for finding Defendants' liable. *See Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d

849 (2d Cir. 1995) (affirming district court's entry of default judgment and declining to reach the summary judgment that the court had granted as a "fall-back position").

A district court has the discretion to exercise its inherent power to manage its docket and impose sanctions, including entering default judgment. *See Thompson v. Housing Auth. Of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam). In addition, the Federal Rules of Civil Procedure authorize entry of default judgment as a potential sanction for failure to abide by a discovery order. Fed. R. Civ. P. 37(b)(2).

In determining whether entry of default judgment is appropriate in a particular case, courts consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Willfulness, bad faith, and fault must be present to justify the entry of case-dispositive sanctions. *Id.*

The Court easily reaches the conclusion that Defendants' non-participation in this case is willful and that the relevant factors favor case dispositive sanctions. Defendant Jimmy John's combative comments to Plaintiff's counsel in October 2017 indicate an awareness of the proceedings and an intention to flaunt the requirement that counsel represent a limited liability corporation. Since withdrawal

of Defendants' counsel, Plaintiff and the Court have gone to great lengths to engage Defendants in this case and to notify Defendants of the developments in the case and the potential consequences of continued non-participation in the case. Defendants have refused to communicate and have unreasonably delayed this litigation as a result.

Therefore, the Court finds, in the alternative, that the sanction of default judgment against Defendants also is appropriate here, with the appropriate judgment amount to be determined.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment and for Sanctions, **ECF No. 39**, is **GRANTED IN PART and DENIED IN PART**. Summary judgment is appropriate with respect to Plaintiff's claims under 42 U.S.C. § 1981 and the WLAD. The Court denies Plaintiff summary judgment as to his state claim for wrongful termination in violation of public policy. The Court further grants Plaintiff's request for entry of default judgment as a sanction.

2. Plaintiff may submit briefing and supporting documentation regarding their request for damages, **noted as a motion**, by **Thursday, October 18, 2018**. Plaintiff shall note the motion for hearing on **Wednesday, November 7, 2018, without oral argument**. If Defendants elect to respond to Plaintiff's filing, they shall file their response **no later than Thursday, November 1, 2018.** <u>If necessary, the Court will schedule a hearing with oral</u>

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT ~ 14

<u>agrument upon a party's request, or on its own initiative after review of the filings.</u>

The District Court Clerk is directed to enter this Order and provide copies to counsel and by mail to Defendants and their last known addresses.

**DATED** September 28, 2018.

           *s/ Rosanna Malouf Peterson*
           ROSANNA MALOUF PETERSON
           United States District Judge